Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| **RENDÓN MORTGAGE BANKERS, CORP.**<br><br>**P/C NANETTE RENDÓN FIGUEROA**<br><br>Recurrente<br><br><br>v.<br><br><br>**OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS, NATALIA I. ZEQUEIRA DÍAZ, COMISIONADA**<br><br>Recurrida | KLRA202300076 | **Revisión Judicial**<br>Procedente de la Oficina del Comisionado de Instituciones Financieras<br><br><br>Caso Núm.:<br>**IF 22-ND-014-247**<br><br><br>Sobre: Denegación de Moción de Reconsideración a la Resolución y Orden Número IF 22-ND-014-247, por concepto de resultado de examen realizado a Rendón Mortgage Bankers, Corp. |

Panel integrado por su presidenta la Juez Rivera Marchand, la Juez Aldebol Mora y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 31 de octubre de 2024.

Comparece ante nos, Rendón Mortgage Bankers, Corp., en adelante Rendón Mortgage o recurrente, solicitando que revisemos la *"Resolución y Orden"* emitida por la Oficina del Comisionado de Instituciones Financieras, en adelante OCIF, el 16 de junio de 2022. En el referido dictamen, la OCIF determinó que la recurrente incurrió en nueve (9) violaciones al ordenamiento jurídico, y ordenó el pago de sus respectivas multas.

Por los fundamentos que expondremos a continuación, *confirmamos el dictamen recurrido.*

---

[1] Véase Orden Administrativa OATA-2023-131 del 14 de julio de 2023, donde se designa al Juez Alberto Luis Pérez Ocasio en sustitución de la Juez Ivelisse Domínguez Irizarry.

# I.

El 22 de enero de 2019, la OCIF rindió un informe tras examinar las operaciones de Rendón Mortgage, durante el periodo de 1 de enero de 2011 al 31 de marzo de 2015.[2] A saber, la OCIF impuso una multa administrativa de $44,300.00 por deficiencias en el capital mínimo requerido, saldos de hipotecas efectuados tardíamente, y diferencia entre los estados financieros e informes rendidos al Comisionado. A su vez, el 29 de enero de 2020, la OCIF rindió un segundo informe para el periodo de 1 de abril de 2015 al 31 de mayo de 2019.[3] En este periodo, la OCIF impuso una multa administrativa de $500.00 por incumplimiento de la resolución anterior, deficiencia del capital mínimo y otros señalamientos.

El 15 de julio de 2021, la OCIF notificó a la recurrente, mediante correo electrónico, que conduciría un examen de sus operaciones durante el periodo de 1 de junio de 2019 al 31 de mayo de 2021.[4] Dicha notificación fue suscrita por la Lcda. Mónica Rodríguez, Comisionada Auxiliar de la OCIF, y el correo electrónico fue enviado por César Nieto Fernández, Supervisor de Exámenes.

El 1 de septiembre de 2022, la OCIF envió a la recurrente varios señalamientos preliminares para los cuales Rendón Mortgage debía proveer las acciones correctivas pertinentes.[5] Los siguientes señalamientos fueron suscritos por José Miranda Lugo, Comisionado Auxiliar de la OCIF, mediante correo electrónico:

1. Incumplimiento con resoluciones y órdenes anteriores
2. Deficiencia en el capital mínimo requerido
3. Fondos de la cuenta en plica depositados en la cuenta de desembolso de la Institución
4. Deficiencia en la presentación del sistema de contabilidad
5. Documentos no disponibles para examen

---

[2] Expediente Administrativo (Informe de Examen), 22 de enero de 2019.
[3] *Id.*, 29 de enero de 2020.
[4] Apéndice del recurso, pág. 48.
[5] *Id.*, pág. 52.

6. Deficiencia en el Protocolo de Prevención y Detección de Casos de Explotación Financiera a Personas de Edad Avanzada o con Impedimentos
7. Informes adicionales sobre pagarés no radicados
8. Informe trimestral de delincuencia no radicado
9. Informes no radicados en Nationwide Mortgage Licencing System and Registry

Según la misiva, la OCIF estableció el 21 de septiembre de 2022 como la fecha límite para que la recurrente sometiera comentarios, acciones correctivas o información que sustentase la modificación de algún señalamiento. De no recibir los comentarios antes de esta fecha, la OCIF los tendría por aceptados y procedería a emitir el *Informe de Examen.*

Tras una solicitud de prórroga, la OCIF otorgó tiempo adicional a la recurrente para responder a los señalamientos emitidos.[6] El 30 de septiembre de 2022, la recurrente objetó todos los señalamientos que la OCIF le había notificado.[7] Sin embargo, el 17 de noviembre de 2022, la recurrente presentó a la OCIF un Plan Correctivo para subsanar los señalamientos de la agencia.[8]

Así las cosas, el 16 de diciembre de 2022, la OCIF emitió una "*Resolución y Orden*", suscrita por el Comisionado Auxiliar, José Miranda Lugo, mediante correo con acuse de recibo.[9] En esta, determinó que la recurrente incurrió en nueve (9) violaciones al ordenamiento jurídico. Por tanto, ordenó que pagara una multa de $5,400.00, dentro de los próximos treinta (30) días a partir de la fecha de notificación.

Según el acuse de recibo, la recurrente recibió la "*Resolución y Orden*" emitida por la OCIF, el 27 de diciembre de 2022.[10]

---

[6] Apéndice del recurso, pág. 61.
[7] *Id.*, pág. 62.
[8] *Id.*, pág. 73.
[9] *Id.*, pág. 1.
[10] *Id.*, pág. 81.

En desacuerdo con dicha determinación, el 10 de enero de 2023, la recurrente presentó una "*Moción de Reconsideración sobre Resolución y Orden Transfondo*".[11] Por su parte, el 13 de enero de 2023, la OCIF denegó la moción de reconsideración, mediante "*Resolución*".[12]

Inconforme con el proceder de la OCIF, la recurrente acudió ante esta Curia el 13 de febrero de 2023, y en su recurso de "*Revisión Judicial*", le imputa a la OCIF el siguiente señalamiento de error:

> ERRÓ LA OCIF AL IMPONERLE A LA RECURRENTE SEVERAS SANCIONES SIN ANTES HABERLE OTORGADO LAS MÁXIMAS GARANTÍAS SOBRE EL DEBIDO PROCESO DE LEY AL PALIO DE LA CONSTITUCIÓN DE PUERTO RICO, LA CONSTITUCIÓN DE LOS ESTADOS UNIDOS Y LA LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME.

El 14 de febrero de 2023, emitimos "*Resolución*" otorgándole siete (7) días a la recurrente para evidenciar el cumplimiento con la Regla 58 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R.58. Además, se concedió a los recurridos treinta (30) días para expresarse sobre el recurso. El 10 de marzo de 2023, la OCIF presentó su "*Oposición a Recurso de Revisión Judicial*", cumpliendo así con lo ordenado.

La recurrente presentó una "*Moción para que se Eleve el Expediente Administrativo*", el 11 de abril de 2023, y este fue elevado el 20 de abril de 2023.

Con el beneficio de la comparecencia de ambas partes y perfeccionado el recurso, procedemos a expresarnos.

## II.

### A. Revisión Judicial de Agencias Administrativas

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. A su vez, posibilita el

---

[11] Apéndice del recurso, pág. 83.
[12] *Id.*, pág. 86.

poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Simpson y otros v. Junta de Titulares*, 2024 TSPR 64, 213 DPR ___ (2024); *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 2024 TSPR 29, 213 DPR ___ (2024); *Comisión Ciudadanos v. G.P. Real Prop.,* 173 DPR 998, 1015 (2008). De esta forma, se vela por que los ciudadanos tengan "un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias". Id. En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal". Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, Ley 38-2017, 3 LPRA sec. 9672. *Simpson y otros v. Junta de Titulares*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra. La precitada Ley es la que autoriza la revisión judicial de las decisiones de las agencias administrativas. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); LPAUG, supra, secs. 9671-9677.

Ahora bien, es harto conocido en nuestro ordenamiento jurídico, que los tribunales deben brindarles la mayor deferencia posible a las decisiones administrativas, por gozar estas de una presunción de validez proveniente de la experiencia que se le atribuye a las mismas. *Transporte Sonell, LLC v. Junta de Subastas*, 2024 TSPR 82, 214 DPR ___ (2024); *Otero Rivera v. Bella Detail Group, Inc.*, 2024 TSPR 70, 213 DPR___(2024); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Mun. de San Juan v. CRIM*, 178 DPR 163, 175 (2010). Al

ejercer la revisión judicial, los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero deben examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra; *Otero v. Toyota*, 163 DPR 716, 729 (2005).

Esto es así, toda vez que las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección debido a su vasta experiencia y conocimiento especializado, lo que significa que estas merecen deferencia por parte de los foros judiciales. *Transporte Sonell, LLC v. Junta de Subastas*, supra; *Otero Rivera v. Bella Detail Group, Inc.*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra; *OEG v. Martínez Giraud, supra, pág. 89*; *Super Asphalt v. AFI y otro*, supra, pág. 819; *Graciani Rodríguez v. Garage Isla Verde*, supra, pág. 126; *Rolón Martínez v. Supte. Policía*, supra, pág. 35; *González Segarra v. CFSE,* 188 DPR 252, 276 (2013); *Mun. de San Juan v. CRIM,* supra, pág. 175.

Sin embargo, aunque los tribunales revisores están llamados a conceder deferencia amplia a las determinaciones de las agencias administrativas, tal norma no es absoluta. En otras palabras, no puede imprimírsele un sello de corrección automático bajo el pretexto de deferencia a aquellas determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra; *Super Asphalt v. AFI y otro*, supra, pág. 819; *Graciani Rodríguez v. Garage Isla Verde*, supra, pág. 126; *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016); *Mun. de San Juan v. CRIM*, supra, pág. 175.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. LPAUG, supra, sec. 9675; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra,

pág. 627. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. Id.

En resumen, ante una revisión judicial, el tribunal tomará en consideración lo siguiente: (a) presunción de corrección; (b) especialización del foro administrativo; (c) no sustitución de criterios; (d) deferencia al foro administrativo; y (e) que la decisión administrativa solo se dejará sin efecto ante una actuación arbitraria, ilegal o irrazonable, o ante determinaciones huérfanas de prueba sustancial del expediente que constituyen un abuso de discreción.

### B. Debido Proceso de Ley Administrativo

Tanto en nuestra Constitución como en la Constitución Federal se consagra el derecho fundamental al debido proceso de ley. Véase, Const. P.R. Art. II, Sec. 7; Const. EE. UU., Emdas. V y XIV, Tomo I; *PVH Motor v. ASG*, 209 DPR 122, 130 (2022). El debido proceso de ley cuenta con dos vertientes: la procesal y la sustantiva. *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 394 (2018); *Domínguez Castro et al. v. ELA I,* 178 DPR 1, 35 (2010).

El debido proceso de ley, en su dimensión procesal, se refiere al "derecho de toda persona a tener un proceso justo y con todas las garantías que ofrece la ley, tanto en el ámbito judicial *como en el administrativo*". *PVH Motor v. ASG,* supra, págs. 130-131; *Aut. Puertos v. HEO,* 186 DPR 417, 428 (2012). Cónsono con ello, se han reconocido las siguientes garantías procesales, las cuales conforman el debido proceso de ley en su vertiente procesal: (1) la concesión de una vista previa; (2) una notificación oportuna y adecuada; (3) el derecho a ser oído; (4) el derecho a confrontarse con los testigos en su contra; (5) a presentar prueba oral y escrita a su favor; y (6) la presencia de un adjudicador imparcial. *PVH Motor v.*

*ASG,* supra*, pág. 131; *Vázquez González v. Mun. de San Juan*, 178 DPR 636, 643 (2010); *Garriga Villanova v. Mun. de San Juan*, 176 DPR 182, 197 (2009). Estas garantías procesales del debido proceso de ley *se han extendido a los procesos administrativos. PVH Motor v. ASG,* supra, pág. 131.

### C. Ley de la Oficina del Comisionado de Instituciones Financieras

La Ley de la Oficina del Comisionado de Instituciones Financieras, Ley Núm. 4 de 11 de octubre de 1985, 7 LPRA sec. 2001 et seq., en adelante, Ley del Comisionado, rige el marco legal y administrativo relacionado a la fiscalización de la industria de la banca, de valores y de instituciones financieras en Puerto Rico. La aprobación de esta ley creó la OCIF, entidad encargada de supervisar la industria financiera en Puerto Rico, cuya complejidad ha seguido aumentando con el desarrollo económico global y el pasar de los años. Exposición de Motivos, Ley del Comisionado, supra.

A saber, la OCIF tiene la responsabilidad primordial de la fiscalización y supervisión de las instituciones financieras que operen o hagan negocios en Puerto Rico. Ley del Comisionado, supra, sec. 2003. El liderazgo de la OCIF está bajo la dirección de un Comisionado que es nombrado por el Gobernador de Puerto Rico, y confirmado por el Senado. Ley del Comisionado, supra, sec. 2005.

En lo aquí pertinente, la Ley del Comisionado, supra, dispone en su Artículo 6, lo siguiente:

> (a) *Subcomisionado.* - El Comisionado nombrará a un Subcomisionado y uno o más Asistentes *y Comisionados Auxiliares*, de probada reputación moral, y con la experiencia y conocimiento en materias financieras que considere necesarios para el mejor cumplimiento de los propósitos de la Oficina del Comisionado...
> [...]

(d) **El Comisionado podrá delegar en cualquier oficial o empleado de la Oficina del Comisionado cualesquiera de sus facultades, deberes y prerrogativas, excepto el poder de reglamentación.**

[...]

Ley del Comisionado, supra, sec. 2006.

(Énfasis suplido)

Dentro de las facultades que puede delegar el Comisionado, está la de imponer multas por incumplimiento de la ley. En específico, el Artículo 20 de la ley en cuestión establece que el Comisionado y sus oficiales podrán "imponer una multa administrativa que no excederá de cinco mil dólares ($5,000) por cada día que una institución financiera deje de cumplir con las órdenes dictadas bajo las disposiciones de esta ley". Ley del Comisionado, supra, 2020.

### D. Ley para Regular el Negocio de Préstamos Hipotecarios de Puerto Rico

Según la Exposición de Motivos de la Ley para Regular el Negocio de Préstamos Hipotecarios de Puerto Rico, Ley Núm. 247 de 30 de diciembre de 2010, 7 LPRA sec. 3051 et seq., en adelante, Ley de Instituciones Hipotecarias, fue aprobada con el propósito de crear uniformidad en la industria hipotecaria, a nivel estatal y federal, después de entrar en vigor el Título V del Secure and Fair Enforcement for Mortgage Licencing Act of 2008 de 30 de julio de 2008, 12 USC sec. 4501 et seq. Dicho estatuto federal estableció que todo originador de préstamos hipotecarios, en la jurisdicción de los Estados Unidos, tendría que licenciarse y registrarse, a través del Nationwide Mortgage Licensing System and Registry.

Al ser la encargada de la fiscalización y supervisión de las instituciones financieras que operen o hagan negocios en Puerto Rico, la OCIF está autorizada a participar en el Nationwide Mortgage

Licensing System and Registry. Ley de Instituciones Hipotecarias, supra, sec. 3056. En específico, tiene la responsabilidad de fiscalizar, supervisar y reglamentar las operaciones de las personas que se dediquen a los negocios sujetos al estatuto en cuestión. Id.

En su función fiscalizadora, el Artículo 6.2 de la Ley de Instituciones Hipotecarias, supra, sec. 3056a, dispone que "el Comisionado podrá realizar exámenes o auditorías de las operaciones del concesionario en su oficina", al igual que exámenes extraordinarios cuando lo estime necesario. Dichas facultades son compatibles con la Sección 6.1 de la LPAUG, supra, sec. 9691.

A su vez, el Artículo 6.3 de la Ley de Instituciones Hipotecarias, supra, sec. 3056b, dispone lo siguiente respecto a la facultad del Comisionado y sus oficiales a imponer y cobrar multas administrativas:

> El Comisionado queda autorizado a:
>
> (a) imponer y cobrar multas administrativas no menores de cien dólares ($100.00) ni mayor de diez mil dólares ($10,000.00) por cada violación a las disposiciones de esta Ley o las disposiciones contenidas en las reglas y reglamentos que podrían ser promulgados en virtud de la misma;
>
> [...]
>
> (c) imponer y cobrar multas administrativas no menores de cien dólares ($100.00) ni mayores de cinco mil dólares ($5,000.00) por cada día en que la persona dedicada a la concesión de préstamos hipotecarios, al corretaje de préstamos hipotecarios, o a la originación de préstamos hipotecarios deje de cumplir con los requerimientos u órdenes dictadas por el Comisionado;
>
> [...]
>
> (Énfasis suplido)

### III.

Rendón Mortgage recurre ante nos mediante un recurso de *"Revisión Judicial"*. En el mismo, hace un recuento de alegadas violaciones al debido proceso de ley administrativo por la OCIF. En

específico, la recurrente plantea que el funcionario que suscribió la "*Resolución y Orden*" del 16 de diciembre de 2022, no tenía las facultades para hacerlo. También arguye que el mencionado dictamen carece de las determinaciones de hechos y conclusiones de derecho que fundamenten la adjudicación por la OCIF. Además, indica que la OCIF le impuso severas sanciones sin cumplir con ningún procedimiento adjudicativo.

Surge del expediente ante nuestra consideración que la "*Resolución y Orden*" objeto de controversia ante nos, fue suscrita por José Miranda Lugo, *Comisionado Auxiliar de la OCIF*. Cónsono con el Artículo 6 de la Ley del Comisionado, supra, Miranda Lugo fue nombrado a su puesto por el Comisionado de la OCIF, quién le pudo haber delegado cualquiera de sus facultades, deberes y prerrogativas, salvo el poder de reglamentación. Es decir, entre los poderes delegados por el Comisionado al Comisionado Auxiliar Miranda Lugo, este estaba facultado para adjudicar y emitir la "*Resolución y Orden*" cuya revisión se solicita. Por lo antes expuesto, justipreciamos que la recurrente *no tiene razón* en su postulado sobre las facultades del Comisionado Auxiliar.

Igualmente, se equivoca Rendón Mortgage con relación a la ausencia de determinaciones de hecho y conclusiones de derecho en el dictamen recurrido, y por no realizar un procedimiento adjudicativo. Si bien es cierto que el dictamen no incluye una sección dedicada a ello, estamos convencidos que la recurrente tuvo amplias oportunidades para entender y refutar las violaciones objeto del presente recurso, y que los fundamentos del dictamen quedaron plasmados en la resolución.

La "*Resolución y Orden*" contiene el periodo cubierto por el examen de inspección, un desglose de las violaciones incurridas por la recurrente, las multas que deberá pagar por cada violación, y los apercibimientos sobre asuntos procesales pertinentes. Para emitir

ese dictamen, la OCIF le notificó a la recurrente que se llevaría a cabo un examen de sus operaciones durante un periodo determinado. Después de ejecutar la inspección, la OCIF le notificó varios señalamientos preliminares, que requerían acciones correctivas. La OCIF le otorgó veinte (20) días para que impugnara o corrigiera los señalamientos, y a petición de la recurrente, le concedió una prórroga de nueve (9) días adicionales. Tras la recurrente objetar a todos los señalamientos y presentar un plan correctivo, la OCIF determinó que Rendón Mortgage incurrió en nueve violaciones y ordenó el pago de sus respectivas multas, basado en los hallazgos notificados. Es decir, la recurrente tuvo la oportunidad de comentar, refutar y presentar evidencia sobre cada una de las violaciones incurridas, y aun después de hacerlo, *la OCIF emitió su dictamen, basado en la evidencia que surge del expediente.*

Así las cosas, resulta forzoso concluir que la OCIF actuó conforme a la Ley y no violentó el debido proceso de ley de la recurrente. Luego de realizar nuestra función revisora, no encontramos que la decisión de la OCIF haya sido arbitraria, irrazonable o ilegal. A saber, la recurrente falló en rebatir la presunción de corrección que cobija la determinación final de la OCIF, al imponerle sanciones tras inspeccionar sus operaciones. Así, *nos corresponde confirmar la determinación de la OCIF.*

**IV.**

Por los fundamentos expuestos, se *confirma* el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones